## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CRYSTAL LYNN LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV448 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Crystal Lynn Love, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entries 8-10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of February 12, 2014.  (Tr. 2088-95.)  Upon denial of those applications initially (Tr. 1948-69, 2004-13) and on reconsideration (Tr. 1970-2003, 2016-21), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 2022).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 1896-1947.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 8-25.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 2086-87, 2167-69), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.  [Plaintiff] met the insured status requirements of the [] Act through September 30, 2017.

2.  [Plaintiff] has not engaged in substantial gainful activity since February 12, 2014, the alleged onset date.

. . .

3.  [Plaintiff] has the following severe impairments: asthma; chronic pain (multiple areas/joints); fibromyalgia; degenerative disc disease; left lower extremity impairment; knee impairment (left knee meniscal tear, sprain); migraines; obesity; anxiety; depression.

. . .

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except she can occasionally push-pull (including foot control operations) with the left lower extremity.  She is limited to only occasional climbing ramp/stairs, balancing, stooping, kneeling, crouching, crawling; no climbing ladders, ropes, or scaffolds.  She requires the flexibility to use [a] cane for all ambulation.  She is limited to only occasional exposure to cold [and] heat extremes, wetness, humidity, vibration, and irritants (such as fumes, odors, dust, gases, and poorly ventilated areas).  She can have no exposure to workplace hazards (including operational control of moving machinery as well as exposure to unprotected heights and hazardous machinery).  She is further limited to simple, routine tasks in entry-level unskilled work, in a low stress job (defined as only occasional, independent decisionmaking and only occasional changes in the work setting).

. . .

6.  [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from February 12, 2014, through the date of this decision.

(Tr. 13-25 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidnce, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's treatment of the medical opinion evidence is erroneous" (Docket Entry 15 at 5 (bold font omitted));

2) "[t]he ALJ's RFC is not supported by substantial evidence because he failed to account for the total limiting effects of all [Plaintiff's] medically determinable impairments and the symptoms she experiences as a result of these impairments and failed to properly explain how he resolved the evidence with his conclusions regarding [Plaintiff's] RFC" (id. at 11 (bold font and single-spacing omitted)); and

3) "[r]emand is required because at the time [the ALJ's] decision was issued, [his] appointment did not comply with the

---

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Appointments Clause" (id. at 17 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 17 at 3-22.)

### 1. Medical Opinion Evidence

Plaintiff's first assignment of error asserts that the ALJ erred by "fail[ing] to give adequate reasons to support his decision that [treating physician Dr. Thomas E.] Parrish's medical opinions were only entitled to little weight" (Docket Entry 15 at 5 (underscoring and single-spacing omitted) (citing Tr. 21-22)), and by "fail[ing] to address or assign any weight to [Physician Assistant John J.] Robbins's medical opinion" (id. at 11 (referencing Tr. 3577)). These contentions fail to warrant relief.

a. Dr. Parrish

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating

source opinions merit the same deference.  The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion.  <u>See</u> 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).  Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence of record.  <u>See</u> 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4).  "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  <u>Craig</u>, 76 F.3d at 590 (emphasis added).  Finally, statements from medical sources (and even treating sources) that a claimant qualifies as disabled or cannot work do not constitute "medical opinions as described in [§§ 404.1527(a)(1), 416.927(a)(1)], but are, instead, opinions on issues reserved for the Commissioner" and do not warrant controlling weight.  20 C.F.R. §§ 404.1527(d), 416.927(d).[6]

Upon Plaintiff's request, Dr. Parrish completed four preprinted disability forms supplied by Plaintiff's then-attorney

---

[6] For claims filed on or after March 27, 2017, the Commissioner has significantly amended the regulations governing opinion evidence.  The new regulations provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.  As Plaintiff filed her claims prior to March 27, 2017 (<u>see</u> Tr. 11), this Recommendation has analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

on June 22, 2016.  (See Tr. 2623-27, 2632-33, 3302, 3309, 3327.)[7]
On a form entitled "Medical Opinion Re: Ability to Do Work-Related
Activities (Physical)," Dr. Parrish opined that, due to
"fibromyalgia" and "lumbar disc disease," Plaintiff could lift and
carry less than 10 pounds occasionally and less than five pounds
frequently, stand and walk for a total of less than two hours, and
sit for a total of about two hours in an eight-hour workday.  (Tr.
2623.)  Dr. Parrish further indicated that Plaintiff would need to
change positions every 15 minutes and would need to lie down every
one to two hours during the workday.  (Id.)  According to Dr.
Parrish, Plaintiff's impairments precluded her from twisting,
stooping, crouching, and climbing stairs/ladders and limited her
ability to reach, finger, push/pull, and handle.  (See Tr. 2624.)
Dr. Parrish additionally included environmental restrictions, noted
that Plaintiff's "[left] lower extremity [wa]s not dependable to
safely ambulate without [a] cane," and predicted that Plaintiff's
impairments would cause her to miss work "[m]ore than four days per
month."  (Id.)  On another form requesting Dr. Parrish's opinion as
to the exertional level of work Plaintiff remained capable of
performing, Dr. Parrish opined that Petitioner "[wa]s unable to
work."  (Tr. 2625.)

---

[7] Because Plaintiff neither generally challenged the ALJ's findings regarding
Plaintiff's mental impairments nor specifically faulted the ALJ for discounting
Dr. Parrish's mental restrictions (see Docket Entry 15), the undersigned will
not discuss Dr. Parrish's opinions on the form entitled "Medical Opinion Re:
Ability to Do Work-Related Activities (Mental)" (Tr. 2626-27).

Lastly, on a "Fibromyalgia Residual Functional Capacity Questionnaire," Dr. Parrish opined that Plaintiff met "the American College of Rheumatology criteria for fibromyalgia" and that her prognosis remained "[g]uarded." (Tr. 2632.)[8] Dr. Parrish checked boxes that listed Plaintiff's fibromyalgia symptoms as "[m]ultiple tender points," "[n]onrestorative sleep," "[c]hronic fatigue," "[m]orning stiffness," "[m]uscle weakness," "[s]ubjective swelling," "Irritable Bowel Syndrome," "[f]requent, severe headaches," "Temporomandibular Joint Dysfunction (TMJ)," "[n]umbness and tingling," "Raynaud's Phenomenon," "[d]ysmenorrhea," "[b]reathlessness," "[a]nxiety," "[p]anic attacks," and "[d]epression." (Id.) In addition, Dr. Parrish opined that Plaintiff experienced "constant" pain in her spine, chest, shoulders, arms, hands, hips, knees, ankles, and feet that she rated at six to eight (and occasionally ten) out of ten on the pain scale, and that Plaintiff's complaints did not amount to malingering. (Tr. 2633.) Dr. Parrish concluded that Plaintiff's pain "[c]onstantly" interfered with the "attention and concentration needed to perform even simple work tasks," but that Plaintiff remained capable of performing "low stress jobs." (Id.)

_____

[8] The Questionnaire lacks a date and Dr. Parrish's signature, as well as a signature page. (See Tr. 2632-33.) Although other copies in the record of the Questionnaire include a third page (see Tr. 2866, 3343), those pages appear identical to the third page of the "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" (compare Tr. 2625, with Tr. 2866, 3343), and the question numbers at the top of the third page do not correlate to the question numbers at the bottom of the Questionnaire's second page (compare Tr. 2865, 3342, with Tr. 2866, 3343).

The ALJ evaluated and weighed Dr. Parrish's opinions as follows:

> [I]n June 2016, [Plaintiff's] doctor completed a medical source statement, indicating [Plaintiff] could stand/walk less than [two] hours and sit about [two] hours in an [eight]-hour day. He said [Plaintiff] would have to change positions every 15 minutes and would need to lie down for [two] hours during the day. He said [Plaintiff] could never twist, stoop, crouch, or climb. He said [Plaintiff] would miss more than four days of work per month. [He] said [Plaintiff] was unable to work. These opinions are given little weight. [Dr. Parrish] merely checked off boxes on a form and did not provide an explanation for the limitations given. The determination that a claimant is disabled is an issue[] reserved to the Commissioner. It appears the limitations were adopted from [Plaintiff's] subjective allegations rather than based on the objective assessment of the treatment provider. Most importantly, the limitations are inconsistent with the rest of the record and are overly restrictive in light of the objective medical evidence.
>
> . . .
>
> [Dr. Parrish] said that pain would constantly interfere with attention and concentration and that [Plaintiff] was capable of performing low stress work. . . .
>
> These opinions are given little weight. [Dr. Parrish] merely checked off boxes on a form and did not provide an explanation for the limitations given. It appears the limitations were adopted from [Plaintiff's] subjective allegations rather than based on the objective assessment of the treatment provider. Most importantly, the limitations are inconsistent with the rest of the record and are overly restrictive in light of the objective medical evidence.

(Tr. 21-22 (internal citations omitted).) Plaintiff contests each of the grounds offered by the ALJ for discounting Dr. Parrish's opinions.

First, Plaintiff argues that, contrary to the ALJ's analysis, "Dr. Parrish actually provided further explanation on each form he completed citing the medical findings that support his conclusions" (Docket Entry 15 at 6), but does not specifically identify any "medical findings" provided by Dr. Parrish that support his extreme restrictions (see id. at 5-8). Indeed, the ALJ did not err by finding that Dr. Parrish failed to provide medical findings explaining his limitations. (See Tr. 21-22.) In support of Dr. Parrish's significant restrictions on lifting, carrying, standing, walking, and sitting, as well as his opinion that Plaintiff needed to lie down multiple times during the workday, Dr. Parrish listed only the diagnoses of "fibromyalgia" and "lumbar disc disease," without any accompanying clinical findings or test results. (Tr. 2623.) To bolster his postural and environmental restrictions, Dr. Parrish included findings of "[left] lower extremity weakness" and "generalized pain," but failed to elucidate how those findings supported either his limitations on upper extremity movements or his significant environmental restrictions. (Tr. 2624 (emphasis added).) Moreover, on the form requesting Dr. Parrish's opinion regarding Plaintiff's exertional capacity, Dr. Parrish provided no supporting explanation for his statement that Plaintiff "[wa]s unable to work." (Tr. 2625.)

Regarding the Questionnaire, Dr. Parrish declined to "[i]dentify the clinical findings, laboratory and test results that

14

show[ed] [Plaintiff's] medical impairments," responding instead
that "[t]here [we]re none to confirm fibromyalgia" and that his
"medical records have all testing." (Tr. 2632 (emphasis in
original).) If, in stating that no clinical findings, or
laboratory or test results exist "to confirm fibromyalgia" (id.),
Dr. Parrish meant to convey that his treatment records contain no
such findings, then that supports the ALJ's criticism that Dr.
Parrish failed to justify his restrictions with medical findings
(see Tr. 21-22). On the other hand, if Dr. Parrish intended to
state that, as a general matter, the medical community recognizes
no clinical findings, or laboratory or test results to confirm a
diagnosis of fibromyalgia, then that contradicts Social Security
Ruling 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012
WL 3104869 (July 25, 2012) ("SSR 12-2p").[9] That Ruling provides
that an ALJ will find that a claimant has fibromyalgia if a
physician provides evidence of the "1990 American College of
Rheumatology (ACR) Criteria for the Classification of
Fibromyalgia," which include, inter alia, "[a]t least 11 positive
tender points on physical examination . . . [which] must be found
bilaterally and both above and below the waist" and upon "digital
palpation with an approximate force of [nine] pounds." SSR 12-2p,
2012 WL 3104869, at *3 (parenthetical omitted). Thus, according to

---

[9] Although Social Security Rulings do not have the same force and effect as
statutes or regulations, they bind all components of the SSA, including ALJs.
See 20 C.F.R. § 402.35(b)(1).

SSR 12-2p (and the ACR), clinical findings <u>do</u> exist that can confirm a diagnosis of fibromyalgia, and Dr. Parrish failed to include <u>any</u> such findings in support of his restrictions (<u>see</u> Tr. 2632).[10]

Plaintiff next attacks the ALJ's statement that "[t]he determination that a claimant is disabled is an issue[] reserved to the Commissioner" (Tr. 21), contending that Dr. Parrish "also opine[d] on [Plaintiff's] mental and physical limitations and . . . d[id] not simply offer a medical opinion on an issue that is reserved to the Commissioner." (Docket Entry 15 at 6.) However, the ALJ clearly recognized that Dr. Parrish provided both exertional and nonexertional limitations, and the ALJ offered several reasons why he discounted those limitations. The ALJ's statement regarding "an issue[] reserved to the Commissioner" (Tr. 21-22) obviously referred to Dr. Parrish's unsupported opinion that Plaintiff "[wa]s unable to work" (Tr. 2625).

Plaintiff additionally takes issue with the ALJ's observation that Dr. Parrish appeared to base his limitations on Plaintiff's subjective allegations rather than Dr. Parrish's objective assessments, arguing that "the ALJ offer[ed] no evidence to support [that] statement[]/conclusion[]." (Docket Entry 15 at 7.) In

---

[10] Although Dr. Parrish checked the box "[m]ultiple tender points" on the Questionnaire, indicating that Plaintiff's fibromyalgia symptoms included such tender points, he failed to provide any further information regarding those tender points, such as the total number of tender points and their location on Plaintiff's body, as required by SSR 12-2p and the ACR. <u>See</u> SSR 12-2p, 2012 WL 3104869, at *3.

particular, Plaintiff contends that "[t]he treatment records near the time of Dr. Parrish's completion of the forms at issue reveal that [Plaintiff] exhibited findings of tenderness over her chest and back, discomfort with straight leg raise testing and range of motion of the hips, weakness in the left foot, diminished bilateral knee reflexes and positive findings of 17/19 on the wide-spread pain index and an 11/12 on the symptom severity score in the [ACR] forms."  (Id. (citing Tr. 3309-10, 3327-28).)

Eight days before Dr. Parrish signed the forms in question, Dr. Parrish examined Plaintiff and noted that "[s]he [wa]s applying for disability" and "ha[d] [three] forms from an attorney for [Dr. Parrish] to fill out."  (Tr. 3309.)  Although Dr. Parrish did document tenderness in Plaintiff's chest and lower back, discomfort during the straight leg raise test and hip range of motion, weak dorsiflexion of her left foot, and decreased knee reflexes bilaterally (see Tr. 3310), Plaintiff fails to explain how those findings, documented at a single examination and in the context of Plaintiff's request that Dr. Parrish complete forms assisting her application for disability, support Dr. Parrish's significant restrictions.  (See Docket Entry 15 at 7.)  Furthermore, Dr. Parrish's express citation of Plaintiff's scores of 17 out of 19 on the ACR's Widespread Pain Index ("WPI") and 11 out of 12 on the ACR's Symptom Severity Scale ("SS Scale") to find her "totally and

17

permanently disabled" (Tr. 3328) further confirms Dr. Parrish's over-reliance on Plaintiff's subjective symptom reporting.[11]

The WPI involves a medical provider asking a patient "the number [of] areas in which the patient has had pain over the last week," with the answer yielding a numerical score out of the 19 listed body areas. www.rheumatology.org/Portals/0/Files/2010_ Preliminary_ Diagnostic_Criteria.pdf (last visited Sept. 23, 2019). Similarly, the SS Scale requires providers to ask a patient to rate the severity of his or her "[f]atigue," "[w]aking unrefreshed," and "[c]ognitive symptoms" over the past week on a scale of zero ("no problem") to three ("severe"), as well as to rate the severity of somatic symptoms in general on a scale of zero ("no symptoms") to three ("a great deal of symptoms"). Id. "The SS Scale score is the sum of the severity of the three symptoms plus the extent (severity) of somatic symptoms in general," with "[t]he final score" yielding a number "between [zero] and 12." Id. (parenthetical omitted). Thus, both the WPI and the SS Scale rely

---

[11] Dr. Parrish did not report Plaintiff's specific responses to the WPI and SS Scale or otherwise indicate how he determined Plaintiff's scores. (See Tr. 3328.) Moreover, Dr. Parrish failed to indicate whether Plaintiff's symptoms had remained at a similar severity level for at least three months or whether Plaintiff had another disorder "that would otherwise explain the pain," as required by the ACR's 2010 Fibromyalgia Diagnostic Criteria, www.rheumatology.org/Portals/0/Files/2010_Preliminary_ Diagnostic_Criteria.pdf (last visited Sept. 23, 2019). (See Tr. 3328.) Furthermore, the office visit at which Dr. Parrish derived Plaintiff's WPI and SS Scale scores did not include any documentation of musculoskeletal or neurologic findings. (See id. (reflecting under "[o]bjective" only Plaintiff's vital signs, her general condition as "[w]ell [d]eveloped," "[w]ell [n]ourished," and in "[n]o distress," and her head as "atraumatic" and "normocephalic").)

entirely on a patient's _subjective_ reports of symptom severity during the week preceding the inquiry.[12]

Plaintiff also points to Dr. Parrish's comment that he "spent at least 30 minutes prior to [Plaintiff] actually getting [to Dr. Parrish's office] reviewing the [disability] forms and researching [Plaintiff's] records and another 30 minutes discussing with her and filling out paperwork regarding her disability" (Tr. 3328) as "indicat[ing] that Dr. Parrish did not rely only on [Plaintiff's] subjective allegations in completing the form[s]." (Docket Entry 15 at 7.) However, Dr. Parrish's reviewing, discussing, and completing the disability forms does not, in any fashion, suggest that he relied on objective findings in completing the forms. Further, although Dr. Parrish noted that he "research[ed] [Plaintiff's] records" for up to 30 minutes prior to completing the forms, he indicated neither which records he researched nor what findings (if any and whether subjective or objective) he considered.

---

[12] Plaintiff additionally argues that "the ALJ fail[ed] to discuss how he considered the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when evaluating Dr. Parrish's medical opinions." (Docket Entry 15 at 7; see also id. at 10.) Plaintiff did not further develop that argument, identifying neither which factors the ALJ failed to evaluate, nor how such failure prejudiced her. (See id.) Those omissions preclude relief. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief." ); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

Plaintiff next challenges the ALJ's finding that Dr. Parrish's restrictions did not harmonize "with the rest of the record and [we]re overly restrictive in light of the objective medical evidence." (Id. at 8.) In that regard, Plaintiff notes that the ALJ "fail[ed] to identify what limitations [we]re inconsistent with the record or which medical records [we]re inconsistent with Dr. Parrish's medical opinions." (Id.) Plaintiff then proceeds to detail multiple subjective and objective findings in the record which she contends demonstrate that Dr. Parrish's opinions remained consistent with the record. (See id. at 8-10 (citing Tr. 1891-94, 2172-79, 2182-83, 2243-62, 2273, 2358-427, 2441-42, 2508, 2531-54, 2616-21, 2655-57, 2668-751, 2812-35, 2867-68, 3539-40, 3562, 3574-77).)

Plaintiff misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his decision to discount Dr. Parrish's opinions with substantial evidence, and not whether other record evidence weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-002, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, although the ALJ did not specify the objective evidence that failed to support Dr. Parrish's opinions in the same paragraph in which he weighed those

opinions (see Tr. 21-22), elsewhere in the ALJ's decision, he detailed evidence that did not support Dr. Parrish's extreme limitations (see Tr. 18-21). That approach suffices. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).

In the portion of the ALJ's decision analyzing Plaintiff's RFC, the ALJ discussed the following evidence:

- although a 2013 "MRI showed right paracentral disc protrusion at L5-S1[, Plaintiff] had a series of epidural steroid injections with 'excellent relief of [pain]'" (Tr. 18 (quoting Tr. 2172 (brackets added), citing Tr. 2324));

- "in April 2014, [Plaintiff's] back was normal to inspection and non-tender" with "painless" range of motion, and in April and May 2014, although Romberg and left straight leg raise tests proved positive, Plaintiff "had normal movement of all extremities" with "no dysfunction or weakness" and normal tone and gait (id. (citing Tr. 2303, 2243-49));

- "[a] lumbar MRI from June 2014 showed mild degenerative disc disease at L5-S1 with posterior annular fissure . . . unchanged from the 2013 MRI" and "a lumbar x-ray from June 2014 was negative" (Tr. 18-19 (citing Tr. 2183-84, 2274-76, 2283-85));

- "in January 2015 . . . [a] lumbar myelogram CT showed mild degenerative retrolisthesis of L5 on S1" and "mild bilateral L5-S1 neuroforaminal narrowing," which were not consistent with [Plaintiff's] complaints" (Tr. 19 (citing Tr. 2563, 2598-602, 2870-73) (internal quotation marks omitted));

- "in October 2015," although Plaintiff "had pain with flexion and extension[, s]traight leg raise was negative" and sensation and reflexes "were normal" (id. (citing Tr. 2655-57));

- "[a] lumbar spine MRI in June 2016 showed unchanged mild degenerative disc disease at L5-S1" (id. (citing Tr. 2784));

- "in the emergency room in September 2016 . . ., [Plaintiff] did not have radicular symptoms or saddle anesthesia[,] . . . [her] back was normal to inspection other than lower paraspinal tenderness[, and s]he had painless range of motion an[d] no vertebral point tenderness" (Tr. 20 (citing Tr. 2775-77));

- "[a] MRI of [Plaintiff's] left knee in August 2014 showed findings suspicious for [a] small peripheral tear of the lateral meniscus," but "in May 2015 . . ., [x]-rays [of Plaintiff's left knee] showed no fractures, subluxations, soft tissue calcification, [] malalignment[,] . . . significant soft tissue swelling or obvious effusion," Plaintiff's "gait was normal," and a cortisone injection "'helped significantly[,]'" as "[Plaintiff] walked out of the office pain-free" (id. (quoting Tr. 3533, citing Tr. 2280-81, 2529-30, 3530-35, 3538)); and

- "in August 2016 . . ., [Plaintiff] had 'pretty good range of motion' of her knees . . ., and she ambulated well without difficulty bearing full weight on her knees" and "was in no undue pain" (id. (quoting Tr. 3437)).

The ALJ's above-described analysis details substantial evidence supporting his finding that Dr. Parrish's "limitations [we]re

inconsistent with the rest of the record and [we]re overly restrictive in light of the objective medical evidence." (Tr. 22.)

b. <u>PA Robbins</u>

Plaintiff also attributes error to "[t]he ALJ's failure to address or assign any weight to [PA Robbins's] medical opinion." (Docket Entry 15 at 11 (underscoring and single-spacing omitted).) In particular, Plaintiff notes that PA Robbins "provided a medical opinion on February 3, 2016 that [Plaintiff] was not able to work" (<u>id.</u> (citing Tr. 3577)) and that, although PA Robbins does not qualify as an acceptable medical source, "[Plaintiff] has a long history of treatment with Salem Neurological, treating with [PA Robbins] and his supervising neurologist Dr. Runheim" (<u>id.</u>; <u>see also id.</u> (quoting 20 C.F.R. §§ 404.1527(c) and 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."))).

As Plaintiff has conceded (<u>see id.</u>), PA Robbins did not, at the time he offered his opinion, constitute an "[a]cceptable medical source[]" under the regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a) (defined to include, <u>inter alia</u>, "[l]icensed physician[s]"), but rather an "[o]ther source[]," 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).[13] As an "[o]ther source[]," PA

---

[13] Applicable to claims filed on or after March 27, 2017, the Commissioner enacted substantial revisions to Sections 404.1513 and 416.913, recodified the definition of "[a]cceptable medical source" into Sections 404.1502(a) and 416.902(a), and, <u>inter alia</u>, included licensed physician assistants as "[a]cceptable medical source[s]." <u>See</u> 20 C.F.R. §§ 404.1502(a), 416.902(a), (continued...)

Robbins lacked the qualifications to offer "medical opinions" as defined by the regulations. See Social Security Ruling 06–03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("SSR 06–03p") (providing that "only 'acceptable medical sources' can give [the SSA] medical opinions . . . [and] can be considered treating sources . . . whose medical opinions may be entitled to controlling weight").[14]

Nevertheless, the ALJ must still evaluate statements from "other sources" like PA Robbins under the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). See Social Security Ruling 96–5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96–5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions").[15]  The ALJ here did not address or weigh PA Robbins's statement regarding

---

[13] (...continued)
404.1513, 416.913 (2017).  This Recommendation applies the versions of the applicable regulations in effect on August 4, 2014, the protective filing date of Plaintiff's instant claims for DIB and SSI (see Tr. 11).

[14] The Commissioner rescinded SSR 06-3p for claims filed on or after March 17, 2017.  See 82 Fed. Reg. 15263 (Mar. 27, 2017).

[15] The Commissioner rescinded SSR 96-5p for claims filed on or after March 27, 2017.  See 82 Fed. Reg. 15263 (Mar. 27, 2017).

Plaintiff's inability to work. (See Tr. 17-23.) The ALJ's failure to discuss or weigh PA Robbins's statement, however, qualifies as harmless error for three reasons. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

As an initial matter, consideration of the context of PA Robbins's statement casts some doubt on whether he intended to offer his opinion that Plaintiff could not work. Under the heading "Plan" at the end of a treatment record dated February 3, 2016, PA Robbins stated that, "[a]t the current time [Plaintiff] is unable to do any form of work" and "is unable to afford physical therapy, water exercises, low impact aerobics, or work hardening." (Tr. 3577.) Given that Plaintiff's inability to afford certain therapies does not constitute a medical matter about which PA Robbins had any expertise, its inclusion in the same setting as the remark that Plaintiff could not work suggests that PA Robbins merely reported Plaintiff's own statements that she could not work and could not afford additional therapies. Second, as discussed above, statements that a claimant cannot work address matters reserved to the Commissioner and carry no special significance. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Third, PA Robbins did not support his conclusory statement with any clinical findings or

explanations.  (See Tr. 3577.)  Thus, Plaintiff cannot demonstrate that the ALJ's express discussion and weighing of PA Robbins's statement would have changed the outcome of her claims.

In sum, Plaintiff's first issue on review fails to warrant reversal or remand.

## 2. Subjective Symptom Reporting and RFC

In Plaintiff's second issue on review, she argues that "[t]he ALJ's RFC is not supported by substantial evidence because he failed to account for the total limiting effects of all [Plaintiff's] medically determinable impairments and the symptoms she experiences as a result of these impairments and failed to properly explain how he resolved the evidence with his conclusions regarding [Plaintiff's] RFC."  (Docket Entry 15 at 11 (bold font and single-spacing omitted).)  More specifically, Plaintiff challenges the ALJ's rationale for finding that Plaintiff's "'statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record'" (id. at 12 (quoting Tr. 18)) and faults the ALJ for "fail[ing] to identify what evidence in the record supports his RFC findings" (id. at 16).  Plaintiff's contentions fall short.

a.  Subjective Symptom Reporting

Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25,

2017) ("SSR 16-3p") (consistent with the Commissioner's regulations) adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. §§ 404.1529, 416.929.[16] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity

---

[16] Applicable to ALJ decisions on or after March 28, 2016, the Social Security Administration superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case postdates the effective date of SSR 16-3p (see Tr. 25) and, thus, this Recommendation will apply SSR 16-3p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms

solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 18.) Later in the decision, the ALJ found as follows:

> The [ALJ] finds that [Plaintiff's] statements are not entirely consistent with or supported by longitudinal review of all of the evidence. [Plaintiff] failed to show up for doctor appointments on a number of occasions. This demonstrates a possible unwillingness to do that which is necessary to improve her condition. It may also be an indication that [Plaintiff's] symptoms [we]re not as severe as purported.

(Tr. 21 (citing Tr. 3116-18, 3409-11) (internal citation omitted).)

Plaintiff challenges the ALJ's part two finding in two respects. First, Plaintiff asserts that, "[d]espite summarizing some of the medical evidence in the record, the ALJ fail[ed] to identify at any point in the decision which treatment records [we]re not consistent with [Plaintiff's] allegations regarding her symptoms, including pain." (Docket Entry 15 at 13.) Second, Plaintiff objects to the ALJ's reliance on two "missed [] appointments in the almost [three-year] period of time that spanned

from her alleged onset date of February 12, 2014 through the date of the hearing on January 13, 2017." (Id.)

Contrary to Plaintiff's allegations, the ALJ's decision sufficiently identifies the medical evidence that conflicts with Plaintiff's subjective statements. The ALJ extensively discussed Plaintiff's testimony (see Tr. 17-18), including her testimony that "[s]he spends most of the day in a recliner," "[s]itting puts too much pressure on her spine, [] walking is too painful[ and ] causes her tachycardia to act up," and that she "walks with a cane" (Tr. 17). Following that discussion, the ALJ analyzed the evidence pertaining to Plaintiff's back pain with radiculopathy (see Tr. 18-19), head and neck pain (see id.), leg weakness (see Tr. 19), widespread fibromyalgia pain (see Tr. 20), and left knee pain (se id.). After each summarization paragraph, the ALJ specifically noted the restrictions in the RFC that accommodated the evidentiary findings discussed by the ALJ. (See, e.g., Tr. 18 ("The limitation to sedentary work with use of a cane for ambulation in the above [RFC] sufficiently accounts for these findings."), 19 ("The limitations to sedentary work; never climbing ladders, ropes, and scaffolds; and use of a cane for ambulation in the above [RFC] account for th[e]s[e findings]."), 20 ("There is no indication [Plaintiff] experiences limitations greater than the [RFC] above.").) Thus, the ALJ indicated multiple times which evidence

conflicted with Plaintiff's subjective complaints of disabling symptoms.

Although an ALJ may permissibly consider a claimant's failure to attend medical appointments as part of the subjective symptom inquiry, see Stephens v. Commissioner of Soc. Sec., No. 2:06CV3123, 2008 WL 68852, at *12 (D.S.C. Jan. 4, 2008) (unpublished) ("In evaluating . . . a Social Security disability claimant's subjective complaints, an ALJ is not precluded from considering whether the claimant complied with her prescribed treatment."), the two missed appointments relied on by the ALJ here provide little (if any) support for the ALJ's findings of "a possible unwillingness [on Plaintiff's part] to do that which is necessary to improve her condition" or "an indication that [Plaintiff's] symptoms are not as severe as purported (Tr. 21). As Plaintiff argues (see Docket Entry 15 at 13), the ALJ cited to just two missed appointments out of the dozens of office visits documented during the three-year relevant period. Furthermore, as Plaintiff notes, the missed appointments, one for a thyroid ultrasound to investigate a thyroid nodule (see Tr. 3116-18), and one for a bone density scan to test for osteopenia/osteoporosis (see Tr. 3409-11), did not concern Plaintiff's "treatment for the medically determinable impairments she alleges are the basis for her disability claim" (Docket Entry 15 at 13).

The ALJ's reliance, _in part_, on Plaintiff's missed appointments to discount her subjective statements constitutes harmless error under the circumstances of this case, see generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), because, as discussed below, the ALJ here relied on other, permissible bases amounting to substantial evidence to discount Plaintiff's subjective statements. See Johnson v. Commissioner of Soc. Sec., 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); Shuler v. Berryhill, No. 0:16CV529, 2017 WL 3634595, at *5 (D.S.C. Aug. 23, 2017) (unpublished) (concluding that, because ALJ otherwise supported his analysis of the claimant's subjective statements with substantial evidence, the ALJ's improper statement regarding the claimant's lack of treatment remained harmless (citing Johnson)).

Plaintiff maintains that "the ALJ failed to identify or consider any of the [] factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) or in [SSR 16-3p]," despite Plaintiff's testimony and evidence "regarding a number of the

factors [], including her daily activities, the location, duration, frequency and intensity of her pain or other symptoms, [and] additional measures (beyond medical treatment) that she utilizes for pain and symptom relief." (Docket Entry 15 at 14.) However, as the Commissioner argues (see Docket Entry 17 at 11), the ALJ clearly did consider those factors. The ALJ discussed Plaintiff's statements that she experiences pain throughout her entire spine which radiates down her legs, urinary incontinence, neck pain, hip pain, knee pain, and headaches. (See Tr. 17-20 (location of symptoms).) The ALJ further noted that Plaintiff claimed to have "good days and bad days" but that "she only ha[d] about two good days per week" which rated as "worse than a bad day for most people" (Tr. 17 (duration and frequency of symptoms)), and that she experienced tachycardia, nausea, dizziness, elevated blood pressure, difficulty sleeping, decreased concentration, and forgetfulness caused by her pain (see Tr. 17-18 (intensity of symptoms)). The ALJ also considered Plaintiff's statements that sitting, walking, heat, and cold exacerbated her symptoms. (See id. (precipitating and aggravating factors).) The ALJ additionally discussed Plaintiff's multiple epidural steroid injections, use of hydrocodone and pain management services (see Tr. 18), and cortisone knee injections (see Tr. 20 (medications)), as well as that she used ice on her lower back, applied heat on her upper back, spent most of the day and slept in a recliner, used a cane

33

for walking (see Tr. 17), participated in physical therapy (see Tr. 20), declined a recommended TENS unit (see Tr. 19), and wore a back brace (see Tr. 18 (other treatment and measures)).  Lastly, the ALJ noted that, "[o]n a good day, [Plaintiff] said she can wash her hair and make some food" (Tr. 17 (daily activities)) and, as discussed above, detailed the objective medical evidence inconsistent with Plaintiff's subjective statements (see Tr. 18-21).

Under such circumstances (particularly the ALJ's multiple references of what evidence within the extensive review of the medical record supported the RFC (and undermined Plaintiff's contrary symptom reporting)), the ALJ's additional reliance on Plaintiff's missed appointments constitutes, at most, harmless error.

b.  <u>RFC</u>

Plaintiff next contends that the ALJ "fail[ed] to identify what evidence in the record support[ed] his RFC findings." (Docket Entry 15 at 16.)  However, as discussed above, the ALJ indicated, after each paragraph summarizing the medical evidence, how the restrictions in the RFC specifically accommodated the findings in that evidence.  (See Tr. 18-21.)

Plaintiff also points out that "[t]he ALJ concluded that the opinion evidence regarding [Plaintiff's] physical limitations was all entitled to little weight," and did not explain which evidence,

not available to the state agency medical consultants, "'indicat[ed
Plaintiff wa]s more limited than the [] consultants suggest[ed].'"
(Docket Entry 15 at 16 (quoting Tr. 22).)  Plaintiff essentially
argues that, because the ALJ rejected all the opinion evidence
present in the record, he impermissibly substituted his own lay
opinion of the evidence in formulating the RFC.

Here, both state agency medical consultants found that
Plaintiff could perform light work with postural and environmental
restrictions (see Tr. 1953-55, 1963-65, 1982-83, 1998-99), which
the ALJ discounted as too permissive:

> These opinions are given little weight.  The state agency
> consultants did not examine [Plaintiff]; they merely
> reviewed written records.  Moreover, additional evidence
> was received at the hearing level – including testimony
> and medical records – and which was not reviewed by the
> state agency, indicating [Plaintiff] [wa]s more limited
> than the state agency medical consultants suggest[ed].

(Tr. 22 (emphasis added).)  Thus, by adopting a sedentary-exertion
RFC, the ALJ struck a balance between the state agency medical
consultants' light-exertion RFC and the less-than-sedentary-
exertion limitations opined by Dr. Parrish.  Far from error, that
constitutes one of the ALJ's evidentiary duties.  See Finch v.
Astrue, 547 F.3d 933, 936 (8th Cir. 2008) ("The ALJ is charged with
the responsibility of resolving conflicts among medical
opinions."); Russell v. Commissioner of Soc. Sec. Admin., No. CA
1:13-2283, 2014 WL 7005199, at *14 (D.S.C. Sept. 5, 2014)
(unpublished) (finding no error where ALJ "accorded little weight

to the state agency physicians' opinions because they did not review additional evidence later made part of the record" and rejected treating physician's less-than-sedentary opinion as unsupported by objective evidence because, in so doing, "the ALJ struck a balance between the conflicting opinion data"), recommendation adopted, 2014 WL 7005237 (D.S.C. Dec. 11, 2014) (unpublished).[17]

In short, Plaintiff has not established prejudicial error in her second issue on review.

### 3. Appointments Clause

Lastly, Plaintiff argues that "[r]emand is required because at the time [the ALJ's] decision was issued, [his] appointment did not comply with the Appointments Clause [of the United States Constitution]." (Docket Entry 15 at 17 (bold font and single-spacing omitted); see also U.S. Const. Art. 2, § 2, cl. 2.) In

---

[17] Plaintiff additionally asserts "that the RFC 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis'" (Docket Entry 15 at 15 (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 96-8p"))), and "that remand was appropriate where[] 'an ALJ fail[ed] to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies frustrate meaningful review'" (id. at 16 (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015))). However, because Plaintiff neither indicated what "relevant functions" the ALJ failed to assess, nor further developed that argument (see Docket Entry 15 at 15-17), the Court need not consider it. See, e.g., Belk, Inc., 679 F.3d at 152 n.4 ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief." ); Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").

support of that argument, Plaintiff relies on <u>Lucia v. Securities</u> <u>& Exch. Comm'n</u>, 585 U.S. ___, 138 S. Ct. 2044 (2018), wherein "the Supreme Court recently held that ALJ's of the Securities and Exchange Commission ('SEC') [we]re inferior officers subject to the Appointments Clause." (Docket Entry 15 at 17 (citing <u>Lucia</u>, 585 U.S. at ___, 138 S. Ct. at 2053-54).) Plaintiff notes that the Supreme Court concluded that "a new hearing with a new properly appointed ALJ" constituted "the appropriate remedy to cure the constitutional error." (<u>Id.</u> (citing <u>Lucia</u>, 585 U.S. at ___, 138 S. Ct. at 2055)). According to Plaintiff, "[s]ince [the] ALJ [who presided over Plaintiff's case] was not a constitutionally appointed judge who was appointed by the President, the Courts of Law or the Commissioner of [the] SSA (i.e. Head of Department) at the time he presided over and decided [Plaintiff's] claim[,] the appropriate remedy under the [Supreme] Court's holding in *Lucia* is for [Plaintiff's] claim[s] to be remanded to a different, constitutionally appointed judge." (<u>Id.</u>)

In response, the Commissioner appears to assume <u>arguendo</u> that the Appointments Clause applies to the SSA's ALJs (<u>see</u> Docket Entry 17 at 14-22), but maintains that "Plaintiff's failure to raise her Appointments Clause challenge at any point in the administrative process forfeit[ed] her claim" (<u>id.</u> at 22). According to the Commissioner, "requiring a claimant to present an Appointments Clause challenge to the agency to preserve it for judicial review

conforms to <u>Lucia</u>'s instruction that only a party 'who makes a timely challenge . . . is entitled to relief'" (<u>id.</u> at 18 (citing <u>Lucia</u>, 585 U.S. at ___, 138 S. Ct. at 2055)), and "serve[s] important efficiency interests . . . in the context of [the] SSA's adjudicative system, which issues hundreds of thousands of decisions each year" (<u>id.</u> at 19).

The Appointments Clause provides as follows:

[The President of the United States] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The Supreme Court in <u>Lucia</u>, relying on its prior case <u>Freytag v. Commissioner of Internal Revenue</u>, 501 U.S. 868 (1991), held that the SEC's ALJs qualified as "inferior Officers" rather than federal employees, because they "hold a continuing office established by law" and "exercise . . . significant discretion when carrying out . . . important functions." <u>Lucia</u>, 585 U.S. at ___, 138 S. Ct. at 2053 (internal quotation marks omitted). However, the Supreme Court emphasized that the plaintiff in <u>Lucia</u> had made a timely constitutional challenge to the ALJ who decided his claim by contesting the validity of the ALJ's appointment before the SEC. <u>Id.</u> at ___, 138 S. Ct. at 2055. Notwithstanding that language in <u>Lucia</u>, Plaintiff

contends that she did not forfeit her Appointments Clause challenge before this Court.  (See Docket Entry 15 at 17-20.)[18]

a. Issue Exhaustion

Plaintiff first asserts that "[t]he Supreme Court determined that a judicially created exhaustion requirement is inappropriate in the context of proceedings before the [SSA] in *Sims v. Apfel* concluding that 'claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.'" (Id. at 18 (quoting Sims v. Apfel, 530 U.S. 103, 112 (2000) (plurality opinion).)  As the Commissioner argues, "Sims holds that a claimant need not raise an issue to the Appeals Council in order to preserve it" (Docket Entry 17 at 19 (emphasis added)), but "did not address the question[] of whether a claimant must raise an

---

[18] Given the pendency of appeals in the Fourth Circuit involving the forfeiture of Appointments Clause challenges, see, e.g., Probst v. Berryhill, 377 F. Supp. 3d 578 (E.D.N.C. 2019), appeal filed, No. 19-1529 (4th Cir. May 17, 2019); Bradshaw v. Berryhill, 372 F. Supp. 3d 349 (E.D.N.C. 2019), appeal filed, No. 19-1531 (4th Cir. May 17, 2019), the Court could, in its discretion, elect to stay the present case pending resolution of those issues by the Fourth Circuit. However, in light of this Court's prior decisions uniformly finding Appointments Clause challenges forfeited when not raised before the SSA, see Hodge v. Saul, No. 1:18CV206, 2019 WL 3767130, at *5 (M.D.N.C. Aug. 9, 2019) (unpublished) (Peake, M.J.), recommendation adopted, 2019 WL 4538736 (M.D.N.C. Sept. 19, 2019) (unpublished) (Schroeder, C.J.); Williams v. Saul, No. 1:18CV539, 2019 WL 3582374, at *5-6 (M.D.N.C. Aug. 6, 2019) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 27, 2019) (Biggs, J.); Clinton v. Saul, No. 1:18CV266, 2019 WL 3556946, at *10-11 (M.D.N.C. Aug. 5, 2019) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 29, 2019) (Eagles, J.); Smith v. Berryhill, No. 1:18CV329, slip op. (M.D.N.C. Apr. 23, 2019) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2019) (Biggs, J.); Martin v. Berryhill, No. 1:18CV115, slip op. (M.D.N.C. Dec. 11, 2018) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Jan. 4, 2019) (Eagles, J.), this Recommendation addresses Plaintiff's Appointments Clause claim under Lucia, as well as the additional, non-Lucia claims presented for resolution.

issue to the ALJ in order to preserve it" (id. at 20 (emphasis added) (citing Sims, 530 U.S. at 106 ("Whether a claimant must exhaust issues before the ALJ is not before us."))).

Furthermore, following Sims, numerous federal courts, including judges of this Court, have continued to find that claimants forfeited the right to bring issues on judicial review that they failed to raise before the ALJ. See, e.g., Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (holding the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (indicating court "ha[d] no intention of extending th[e] rule [in Sims] . . . to the failure of an applicant to raise an issue at the ALJ level" and deeming issue not raised before ALJ waived); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue where the plaintiff failed to raise it at ALJ's hearing), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J.); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at * 9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains.

Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)); see also Sayre v. Chater, 113 F.3d 1232 (table), 1997 WL 232305, at *2 (4th Cir. May 8, 1997) (unpublished) (finding, prior to Sims, issue on appeal waived where "nothing in the record [] suggest[ed] that [the plaintiff] provided either the ALJ or the Appeals Council with the opportunity to consider" issue).

b.    Futility

Plaintiff next argues that "the [Supreme] Court determined . . . [that] it was not necessary for the individual bringing the Appointments Clause challenge to raise the issue with the ALJ" (Docket Entry 15 at 18 (citing Lucia, 585 U.S. at ___, 138 S. Ct. at 2055)), which "is in line with prior holdings of the [Supreme] Court recognizing that it is not necessary to raise challenges with government officials who do not have the institutional competency to resolve the particular type of issue presented, such as the constitutionality of a procedure" (id. at 18 (citing Moore v. East Cleveland, Ohio, 431 U.S. 494, 497 n.5 (1977), Mathews v. Diaz, 426 U.S. 67, 76 (1976), and Mathews v. Eldridge, 424 U.S. 319, 329-30 (1976))). However, Plaintiff glosses over the fact that, in Lucia, the plaintiff had challenged the constitutionality of the ALJ under

the Appointments Clause before the SEC, i.e., while his case remained before the agency involved. See Lucia, 585 U.S. at ___, 138 S. Ct. at 2055. Thus, the fact that the plaintiff did not raise the Appointments Clause challenge before the ALJ did not alter Lucia's observation that that only a party "who makes a timely challenge . . . is entitled to relief." Id. Moreover, the other cases Plaintiff cites do not aid her cause.

In Moore, a plurality of the Supreme Court merely noted in a footnote that the plaintiff's failure to request a variance from the city regarding a housing ordinance criminally enforced against her did not prevent the Supreme Court from hearing her constitutional challenge to that ordinance. See Moore, 431 U.S. at 497 n.5. In so doing, the Supreme Court noted that, "[t]here are sound reasons for requiring exhaustion of administrative remedies in some situations, but such a requirement is wholly inappropriate where the party is a criminal defendant . . . defend[ing] against the [s]tate's prosecution on the ground that [an] ordinance is facially invalid." Id. (emphasis added). This case involves neither a criminal prosecution nor a facial challenge to the validity of a law enforced against Plaintiff.[19]

_____

[19] For that same reason, Plaintiff's reliance on Jones Bros., Inc. v. Secretary of Labor, 898 F.3d 669 (6th Cir. 2018) (see Docket Entry 15 at 19-20), misses the mark. In that case, the Sixth Circuit held only that failure to exhaust administrative remedies would not bar facial Appointments Clause challenges, where the plaintiff challenges the constitutionality of the law authorizing appointment of officers. See id. at 674. The court noted that waiver could bar as-applied challenges, where the plaintiff claims that the agency has not
(continued...)

In _Diaz_, the Supreme Court found that the Department of Health, Education, and Welfare ("DHEW") had waived the requirement that the plaintiffs raise their constitutional challenge to Medicare eligibility requirements before the DHEW by expressly acknowledging in open court the futility of doing so. _See_ _Diaz_, 426 U.S. at 72, 75-77. No such circumstances exist here.

With regard to _Eldridge_, as the Commissioner argues, "the Supreme Court held only that a plaintiff's failure to raise a Due Process claim during the administrative process, and the failure to complete the administrative process, did not divest the district court of jurisdiction under 42 U.S.C. § 405(g)," and "did not hold, as Plaintiff suggests, that a district court must _always_ excuse forfeiture in Social Security appeals." (Docket Entry 17 at 21 (emphasis added) (citing _Eldridge_, 424 U.S. at 329-30).) Moreover, a court may exercise its discretion to excuse forfeiture in "rare case[s]," _Freytag_, 501 U.S. at 879, and the _Eldridge_ court noted that the plaintiff had "raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in

---

[19] (...continued)
applied authorizing law consistently with the Constitution, but did not raise the challenge before the agency in question. _See_ _id._ at 674-77. As in _Jones_, Plaintiff here "seeks to enforce [the laws authorizing the appointment of the SSA's ALJs], not to invalidate [them]." _Id._ at 676-77; _see also_ 5 U.S.C. § 3105 ("Each agency shall appoint as many [ALJs] as are necessary for proceedings required to be conducted . . . ."); 42 U.S.C. § 904(a)(1) ("The Commissioner shall appoint such additional officers and employees as the Commissioner considers necessary to carry out the functions of the [SSA] . . . .").

a way not recompensable through retroactive payments," <u>Eldridge</u>, 424 U.S. at 331. Plaintiff has not shown similar circumstances that make her case sufficiently "rare" to warrant relief from forfeiture. Furthermore, Plaintiff's interpretation of <u>Eldridge</u> simply does not square with <u>Lucia</u>'s much more recent command that only "one who makes a timely challenge" under the Appointments Clause is entitled to relief, <u>Lucia</u>, 585 U.S. at ___, 138 S. Ct. at 2053. <u>See Stearns v. Berryhill</u>, No. C17-2031, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018) (unpublished) (rejecting the plaintiff's argument based on <u>Eldridge</u> "that an issue need not be raised if the ALJ does not have authority to decide it," noting that such an argument "does not hold water under <u>Lucia</u> . . ., [because] with regard to Appointments Clause challenges, only 'one who makes a timely challenge' is entitled to relief," and concluding that, "[i]n the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final").

In further support of her futility argument, Plaintiff maintains that, "even if [she] had raised the issue before the ALJ or the Appeals Council, [the] SSA's own position would have precluded the ALJ or the Appeals Council from entertaining a challenge to the constitutionality of the ALJ's appointment." (Docket Entry 15 at 19.) According to Plaintiff, "[i]n the Emergency Message ('EM') [the] SSA issued prior to the [Supreme]

Court's decision in _Lucia_[,] [the] SSA instructed that[,] 'because [the] SSA lacks the authority to finally decide constitutional issues such as these, ALJ's will not discuss or make any findings related to the Appointments Clause issue on the record'" and "'the [Appeals Council] will not acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue.'" (<u>Id.</u> (quoting Emergency Message 18003, <u>Important Information Regarding Possible Challenges to Appointment of Administrative Law Judges in SSA's Administrative Process</u> (Jan. 30, 2018) ("EM-18003")).)

In both EM-18003, issued while <u>Lucia</u> remained pending before the Supreme Court, and in Revised Emergency Message 18003 (June 25, 2018) ("EM-18003 REV"), issued four days after <u>Lucia</u>, the SSA instructed that, "[b]ecause [the] SSA lacks the authority to finally decide constitutional issues such as these, ALJs will **not** discuss or make any findings related to the Appointments Clause issue on the record" EM-18003 § C.1, EM-18003 REV § C.1, and "the [Appeals Council] will **not** acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue" EM-18003 § C.3, EM-18003 REV. § C.3.[20]  Thus, no Emergency Message signaling the "futility" of raising an Appointments Clause challenge with either

---

[20] On August 6, 2018, the SSA revised EM-18003 REV to advise that, "[o]n July 16, 2018, the Acting Commissioner ratified the appointment of ALJs . . . and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims," and, with regard to Appointments Clause challenges received before July 16, 2018, to instruct ALJs to "acknowledge[ such challenges] in the record . . . for any necessary action" EM-18003 REV 2, § C.1, and the Appeals Council to "consider the challenge in the context of the facts of the case," EM-18003 REV 2, § C.3.

the ALJ or the Appeals Council existed from the time Plaintiff first requested a hearing before an ALJ (June 5, 2015 (see Tr. 2022)) to the date of the ALJ's decision (Apr. 6, 2017 (see Tr. 25)). That circumstance defeats Plaintiff's futility argument. See Bennett v. Berryhill, No. 2:17CV520, 2019 WL 1104186, at *11 (E.D. Va. Feb. 15, 2019) (unpublished) (finding EM-18003, issued after ALJ's decision, irrelevant, because "[t]he fact that ALJs were directed at some later time to not address the same argument [the plaintiff] has now raised ha[d] no bearing on the ALJ's or the Commissioner's [prior] ability to address [the plaintiff's] Appointment Clause challenge"), recommendation adopted, 2019 WL 1102203 (E.D. Va. Mar. 8, 2019) (unpublished).

Furthermore, although the Supreme Court decided Lucia on June 21, 2018, nearly three months after the Appeals Council denied Plaintiff's request for review on March 30, 2018 (see Tr. 1-7), the Supreme Court decided Freytag in 1991 and, in Lucia, found that Freytag provided the precise test the court needed to gauge whether the SEC's ALJs constituted "inferior Officers" subject to the Appointments Clause, see Lucia, 585 U.S. at ___, 138 S. Ct. at 2053. Thus, long-standing authority existed during the time Plaintiff's claim remained pending before the ALJ under which Plaintiff, proceeding through counsel, could have asserted her Appointments Clause challenge. See Island Creek Coal Co. v. Wilkerson, 910 F.3d 254, 257 (6th Cir. 2018) ("[The plaintiff]

46

cannot hold the line on the ground that its Appointments Clause challenge lacked merit until the Supreme Court decided [Lucia]. No precedent prevented the [plaintiff] from bringing the constitutional claim before then. Lucia itself noted that existing case law 'says everything necessary to decide this case.'"); Lee v. Berryhill, No. 2:18CV214, 2019 WL 1299366, at *2 n.1 (E.D. Va. Mar. 21, 2019) (unpublished) (rejecting the plaintiff's assertion "that she raised her claim at the earliest possible opportunity after Lucia was decided," because the "[p]laintiff, represented by counsel, had ample notice of the ability to raise the ALJ appointment issue during her administrative proceeding in light of the . . . fact that the Lucia opinion is self-described as an application of existing Supreme Court precedent" (internal quotation marks and citation omitted) (emphasis in original) (citing Lucia, 585 U.S. at ___, 138 S. Ct. at 2053)).

Moreover, even if EM-18003 or EM-18003 REV had applied while Plaintiff's case remained before the ALJ, she could not establish the futility of raising her Appointments Clause challenge before the SSA. As another district court reasoned:

> Even if the Emergency Messages were relevant here, the [recommendation's] futility analysis is incorrect. . . . The issue is not whether the ALJ could resolve or decide an issue of constitutional law, but instead whether the SSA, alerted to the problem by [the plaintiff's] timely objection, could have corrected any error in the ALJ's appointment or assigned a different ALJ to preside over [the plaintiff's] hearing.

> There seems to be little dispute that this could have
> been done.  All the [Acting] Commissioner needed to do
> was to appoint or reappoint the ALJs herself, given that
> 'inferior officers' such as the ALJs can be appointed by
> 'Heads of Departments.'  <u>See</u> U.S. Const., art. II, § 2,
> cl. 2.  This is in fact precisely what the head of the
> SSA eventually did.

<u>Muhammad v. Berryhill</u>, 381 F. Supp. 3d 462, 471 (E.D. Pa. 2019);

<u>see also</u> <u>id.</u> at 471 n.9 ("[R]aising the challenge to the ALJ could

have at least made it possible for the SSA to understand and

correct the infirmity of the ALJ's appointment, or at a minimum,

repetition of the objection may have led to a change of policy or

put the SSA 'on notice of the accumulating risk of wholesale

reversals being incurred by its persistence.'" (quoting <u>United

States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952)));

<u>Flack v. Commissioner of Soc. Sec.</u>, No. 2:18CV501, 2018 WL 6011147,

at *4 (S.D. Ohio Nov. 16, 2018) (unpublished) ("[R]egardless of

[EM-18003], [the plaintiff] still could have raised her

Appointments Clause challenge before the ALJ."), <u>recommendation

adopted</u>, 2018 WL 1236097 (S.D. Ohio Mar. 18, 2019) (unpublished).

Lastly, since <u>Lucia</u> (and notwithstanding contrary rulings in

<u>Probst v. Berryhill</u>, 377 F. Supp. 3d 578 (E.D.N.C. 2019), <u>appeal

filed</u>, No. 19-1529 (4th Cir. May 17, 2019), and <u>Bradshaw v.

Berryhill</u>, 372 F. Supp. 3d 349 (E.D.N.C. 2019), <u>appeal filed</u>, No.

19-1531 (4th Cir. May 17, 2019)), other district courts in the

Fourth Circuit overwhelmingly have rejected as forfeited challenges

to the SSA's ALJs under the Appointments Clause when the plaintiff

did not raise the issue while his or her claim remained pending before the SSA.  See, e.g., Joines v. Berryhill, No. 5:18CV65, 2019 WL 4197190, at *4 (W.D.N.C. Sept. 4, 2019) (unpublished); Lamb v. Berryhill, No. 1:18CV202, 2019 WL 4197182, at *2-3 (W.D.N.C. Sept. 4, 2019) (unpublished); Taylor v. Saul, No. 1:16CV44, 2019 WL 3837975, at *4-6 (W.D. Va. Aug. 15, 2019) (unpublished); Harris v. Saul, No. 4:18CV135, 2019 WL 2865840, at *5 (E.D.N.C. July 2, 2019) (unpublished); Lewark v. Saul, No. 2:18CV45, 2019 WL 2619370, at *2 (E.D.N.C. June 26, 2019) (unpublished); Morrison v. Berryhill, No. 5:18CV156, 2019 WL 2607026, at *1 (W.D.N.C. June 25, 2019) (unpublished); Edwards v. Berryhill, No. 3:18CV615, 2019 WL 2619542, at *4-5 (E.D. Va. June 6, 2019) (unpublished), recommendation adopted, 2019 WL 2620005 (E.D. Va. June 26, 2019) (unpublished); Edwards v. Berryhill, No. 2:18CV121, 2019 WL 1919167, at *4 (E.D. Va. Apr. 29, 2019) (unpublished); Shelton v. Berryhill, No. 2:17CV609, 2019 WL 1330897, at *11-12 (E.D. Va. Mar. 25, 2019) (unpublished), appeal filed, No. 19-1715 (4th Cir. July 8, 2019); Shipman v. Berryhill, No. 1:17CV309, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019) (unpublished).

In sum, the Court should conclude that Plaintiff's failure to raise her challenge under the Appointments Clause while her claim remained pending before the SSA forfeited her right to raise the issue on judicial review.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 14) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 9, 2019